**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

STEVEN JAMES F.,

                    Plaintiff,    1:20-cv-14183-NLH

v.                                **OPINION**

COMMISSIONER OF SOCIAL
SECURITY,[1]


_____

**APPEARANCES:**

AGNES S. WLADYKA
AGNES S. WLADYKA, LLC
1122 ROUTE 22 WEST
MOUNTAINSIDE, NJ 07092

        *On behalf of Plaintiff*

ELIZABETH ANN CORRITORE
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET
6TH FLOOR
PHILADELPHIA, PA 19123

        *On behalf of the Commissioner*


**HILLMAN**, District Judge

    This matter comes before the Court pursuant to Section

205(g) of the Social Security Act, as amended, 42 U.S.C. §

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner
of the Social Security Administration.

405(g), regarding Plaintiff's application for Disability

Insurance Benefits ("DIB")[2] under Title II of the Social Security

Act.  42 U.S.C. § 423, et seq.  The issue before the Court is

whether the Administrative Law Judge ("ALJ") erred in finding

that there was "substantial evidence" that Plaintiff was not

disabled at any time since his alleged onset date of disability,

June 18, 2015.  For the reasons stated below, this Court will

affirm that decision.

I.    **BACKGROUND AND PROCEDURAL HISTORY**

On February 23, 2017 and March 6, 2017, Plaintiff filed an

application for DIB, alleging that he became disabled on June

18, 2015.  (ECF 12 at 1).  Plaintiff claims that he can no

longer work as a home health aide because of his impairments of

diabetes mellitus, degenerative joint disease, obesity,

obstructive sleep apnea, bipolar disorder, social anxiety

disorder, and post-traumatic stress disorder ("PTSD").[3]  (See

generally id.)

Plaintiff's claim was denied initially and upon

---

[2] DIB is a program under the Social Security Act to provide disability benefits when a claimant with a sufficient number of quarters of insured employment has suffered such a mental or physical impairment that the claimant cannot perform substantial gainful employment for at least twelve months.  42 U.S.C. § 423 et seq.

[3] On the dates of his applications of February 23 and March 6, 2017, Plaintiff was 44 years old, which is defined as a "younger person" (age 49 and under).  20 C.F.R. § 404.1563.

reconsideration.  (Id. at 1).  Plaintiff requested a hearing before an ALJ, which was held on September 10, 2019.  (Id. at 1-2).  On November 19, 2019, the ALJ issued an unfavorable decision.  (Id. at 2).  Plaintiff's Request for Review of Hearing Decision was denied by the Appeals Council on August 11, 2020, making the ALJ's decision final.  (Id.)  Plaintiff brings this civil action for review of the Commissioner's decision.

## II.  DISCUSSION

### A.  Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for social security benefits.  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means more than "a mere scintilla."  Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.  The inquiry is not whether the reviewing court would have made the same determination, but whether the

3

Commissioner's conclusion was reasonable.  See Brown v. Bowen,
845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its
totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir.
1984).  "[A] court must 'take into account whatever in the
record fairly detracts from its weight.'" Schonewolf v.
Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks
v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th
Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S.
474, 488 (1951)).

The Commissioner "must adequately explain in the record his
reasons for rejecting or discrediting competent evidence."
Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing
Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third
Circuit has held that an "ALJ must review all pertinent medical
evidence and explain his conciliations and rejections." Burnett
v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000).
Similarly, an ALJ must also consider and weigh all the non-
medical evidence before him.  Id. (citing Van Horn v. Schweiker,
717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d
700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the
Commissioner's reasoning is indeed essential to a meaningful
court review:

4

> Unless the [Commissioner] has analyzed all
> evidence and has sufficiently explained the
> weight he has given to obviously probative
> exhibits, to say that his decision is
> supported by substantial evidence approaches
> an abdication of the court's duty to
> scrutinize the record as a whole to
> determine whether the conclusions reached
> are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  Although
an ALJ, as the factfinder, must consider and evaluate the
medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here
is no requirement that the ALJ discuss in its opinion every
tidbit of evidence included in the record," Hur v. Barnhart, 94
F. App'x 130, 133 (3d Cir. 2004).  In terms of judicial review,
a district court is not "empowered to weigh the evidence or
substitute its conclusions for those of the fact-finder."
Williams, 970 F.2d at 1182.  However, apart from the substantial
evidence inquiry, a reviewing court is entitled to satisfy
itself that the Commissioner arrived at his decision by
application of the proper legal standards.  Sykes, 228 F.3d at
262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983);
Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

     B.   **Standard for DIB**

     The Social Security Act defines "disability" for purposes
of an entitlement to a period of disability and disability
insurance benefits as the inability to engage in any substantial
gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  See 42 U.S.C. § 1382c(a)(3)(A).  Under this definition, a plaintiff qualifies as disabled only if her physical or mental impairments are of such severity that she is not only unable to perform her past relevant work, but cannot, given her age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work.  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated regulations for determining disability that require application of a five-step sequential analysis.  See 20 C.F.R. § 404.1520.  This five-step process is summarized as follows:

1.   If the claimant currently is engaged in substantial gainful employment, she will be found "not disabled."

2.   If the claimant does not suffer from a "severe impairment," she will be found "not disabled."

3.   If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4.   If the claimant can still perform work she has done in the past ("past relevant work") despite the severe impairment, she will be found "not disabled."

6

> 5. Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not she is capable of performing other work which exists in the national economy. If she is incapable, she will be found "disabled." If she is capable, she will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f). Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983). In the first four steps of the analysis, the burden is on the claimant to prove every element of her claim by a preponderance of the evidence. See id. In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

**C. Analysis**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 18, 2015, Plaintiff's alleged onset date and that he had sufficient insurance coverage

through June 30, 2021.  (R. at 12).  At step two, the ALJ found
that Plaintiff's impairments of diabetes mellitus, degenerative
joint disease, obesity, obstructive sleep apnea, bipolar
disorder, social anxiety disorder, and PTSD were severe.  (R. at
13).  The ALJ also determined that his impairments of
hypertension and hyperlipidemia, along with his history of
alcohol and substance use disorder, were not severe.  (Id.)  At
step three, the ALJ determined that Plaintiff's severe
impairments or his severe impairments in combination with her
other impairments did not equal the severity of one of the
listed impairments.  (Id. at 13-15).

The ALJ next determined that Plaintiff had the residual
functional capacity ("RFC") to perform work at the sedentary
level,[4] with certain exertional restrictions.[5]  (R. at 15).  At
steps four and five, the ALJ determined that based on
Plaintiff's RFC, he would not be able to perform his past
relevant work but would be able to perform sedentary occupations

---

[4] 20 C.F.R. § 404.1567 ("Physical exertion requirements. To
determine the physical exertion requirements of work in the
national economy, we classify jobs as sedentary, light, medium,
heavy, and very heavy.").

[5] Later in the decision, the ALJ refers to Plaintiff as limited
to "light" work rather than "sedentary."  (R. at 20, 22).
Plaintiff does not raise this as one of his assignments of
error.  Nevertheless, because it is salient to the correctness
of the RFC analysis, which Plaintiff does contest, the Court
will address it later in this Opinion.

such as document preparer, addresser, and cutter and paster.
(Id. at 22).

From the Court's review of Plaintiff's briefing, the Court
discerns six areas of concern:  (1) whether the ALJ took into
account the status of Plaintiff's diabetes mellitus, his
obesity, and his mental conditions; (2) whether the fact that
Plaintiff engaged in some recreation barred a finding of
disability; (3) whether the ALJ afforded proper weight to
Plaintiff's subjective testimony on his pain; (4) whether the
RFC determination was conclusory; (5) whether the ALJ posed an
accurate hypothetical to the vocational expert (the "VE"); and
(6) whether there were a significant number of alternative jobs
in New Jersey for Plaintiff.

### i.   The Status of Plaintiff's Diabetes, Obesity, and Mental Health

The Court rejects Plaintiff's first assignment of error.
Plaintiff argues that the ALJ's conclusion that his diabetes
mellitus was controlled by Plaintiff's current treatment regimen
is belied by the medical evidence in the record.  (ECF 12 at 17-
20; R. at 13).  In coming to this conclusion, the ALJ cited to
the finding of Plaintiff's doctor from November 2016 that his
diabetes did not cause him any complications.  (R. at 375).  The
ALJ found that Plaintiff's diabetic neuropathy was stable and
cited to evidence in the record that Plaintiff's physical range

of motion and sensory exam were normal.  (Id. at 20).  Medical
records from January 2018 indicate that Plaintiff's diabetes was
improving significantly.  (R. at 718-20).  Plaintiff, himself,
testified in 2019 that his diabetes has improved "tremendously"
over the years.  (R. at 63).  In Plaintiff's arguments regarding
his diabetes, he appears to be relying of medical records from
prior to 2018 and 2019, where there are indications of
improvement.  (ECF 12 at 19-20).

In appropriate circumstances, improvement in a condition
can be a basis for an ALJ to determine that a condition is not
disabling. Miller v. Comm'r of Soc. Sec., No. 20-3642, 2021 WL
3137439, at *3 (3d Cir. July 26, 2021) (stating district court's
finding of no disability was supported by substantial evidence
where ALJ relied in part on the improvement of claimant's
condition).  Thus, the Court finds that the ALJ's finding that
Plaintiff's diabetes was controlled by his current treatment
regimen was supported by substantial evidence.  Fargnoli, 247
F.3d at 38.

Plaintiff's next argument is that the ALJ did not assess
the severity of his obesity.  (ECF 12 at 20).  The ALJ
specifically stated that "the undersigned took into
consideration the claimant's obesity as required by SSR 19-2p."
(R. at 13).  The fact that the ALJ did not repeatedly cite to
Plaintiff's obesity thereafter does not undermine the ALJ's

decision as the ALJ is not required to discuss every tidbit of evidence in the record.  Hur, 94 F. App'x at 133.  Indeed, such a requirement would make decisions by ALJs clunky and redundant. Plaintiff bases his argument on SSR 02-1p, which is not applicable to his case as it was superseded by SSR 19-2p.  SSR 19-2p, n.14 ("[W]e will use this SSR on and after its applicable date in any case in which we make a determination or decision. We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions.").  Looking at the ALJ's opinion holistically in light of the record as a whole, the Court is satisfied that the ALJ considered Plaintiff's obesity and applied the correct legal standard.  Daring, 727 F.2d at 70; Sykes, 228 F.3d at 262.

Plaintiff argues further that the ALJ did not consider his mental impairments in his analysis because he did not consider how they limit his ability to function.  (R. at 20-22).  The ALJ dedicated multiple pages to a discussion of Plaintiff's ability to function and perform substantially gainful activity. (Id. at 13-16).  He specifically noted that Plaintiff was able to maintain a social life despite these conditions and that the conditions appeared to be managed successfully with medication. (See id. at 14 ("Bipolar disorder causes some mood swings, which are mostly controlled with medication. He is able to maintain relationships and does not isolate himself.")).  The ALJ

specifically discussed how Plaintiff's mental health conditions affected his ability to function, particularly in a work setting, and cited to the record when doing so.  (Id. at 13-16). At bottom, Plaintiff appears to be asking this Court to reconsider the ALJ's analysis, which it will not do where the ALJ's decision was supported by substantial evidence.  Williams, 970 F.2d at 1182.

### ii.  Whether Plaintiff's Recreation Activities Barred a Finding of Disability

Plaintiff argues that the ALJ erred when he concluded that because Plaintiff was able to do some recreational activities, Plaintiff was not disabled.  (ECF 12 at 23).  The ALJ's analysis is more nuanced than that.  Rather, the ALJ considered how Plaintiff's recreational activities bore on the degree of Plaintiff's functional limitations.  (R. at 16 (discussing Plaintiff's hobbies of going for walks, listening to music, and attending support groups in the RFC analysis)).  The ALJ weighed how these recreational activities squared with Plaintiff's medical records and his claimed limitations.  (See id. at 17 ("While the claimant's foot related issues cause discomfort and/or pain, it does not appear to limit his ability regarding mobility. Per the claimant's self-report, in August 2017 he was walking two miles each day.")).

Recreational activities may properly be considered by an

ALJ in conjunction with the rest of the evidence in the record. Herron v. Comm'r of Soc. Sec., No. CIV.A. 08-1417MLC, 2009 WL 1834322, at *8 (D.N.J. June 24, 2009), aff'd, 386 F. App'x 68 (3d Cir. 2010) ("Daily activity is in fact one of the factors the ALJ is to consider in determining how the plaintiff's symptoms impact residual functional capacity.").  The Court holds that the ALJ did not err in considering Plaintiff's recreational activities in his analysis.

### iii. Whether Proper Weight Was Given to Plaintiff's Subjective Testimony of Pain

Plaintiff argues that the ALJ did not adequately credit his testimony regarding his pain and was required to explain why he discounted the testimony.  (ECF 12 at 23).  While an ALJ must explain why he is discounted subjective accounts of pain, such accounts must be supported by objective medical records. Schaudeck v. Comm'r of Social Security, 181 F.3d 429, 433 (3d Cir. 1999) (explaining that allegations of pain and other subjective symptoms must be supported by objective medical evidence, and an ALJ may reject a claimant's subjective testimony if he does not find it credible as long as he explains why he is rejecting the testimony); SSR 16-3p ("In determining whether an individual is disabled, we consider all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the

13

objective medical and other evidence in the individual's record.
. . Under our regulations, an individual's statements of
symptoms alone are not enough to establish the existence of a
physical or mental impairment or disability."); 20 C.F.R. §
416.929(c)(4) ("We will consider whether there are any
inconsistencies in the evidence and the extent to which there
are any conflicts between your statements and the rest of the
evidence ....").

In this case, the ALJ explicitly went through Plaintiff's
testimony regarding his symptoms before stating that he found
that they were not entirely consistent with objective medical
records.  (R. at 16-17).  He followed up that statement with a
parsing of what that objective medical evidence showed in
comparison to Plaintiff's subjective complaints, consistently
citing to the record.  (Id. at 17-20).  The Court declines to
reverse or remand on this basis.

### iv.  Whether the ALJ's RFC Determination Was Conclusory

Plaintiff argues that the RFC determination was conclusory
in that it ran afoul of SSR 96-8p, which requires an ALJ to
explain a work level determination, and that the opinion below
failed to provide a function-by-function analysis.  (ECF 12 at
26).  SSR 96-8p requires a narrative of how the evidence
supports the ALJ's conclusion regarding the RFC.  At a high

level, the RFC is a function-by-function assessment based on all
of the relevant evidence of an individual's ability to do work-
related activities, but an ALJ does not need to use particular
language or adhere to a particular format in conducting her RFC
analysis.  Ungemach v. Commissioner of Social Security, 2019 WL
3024858, at *4 (D.N.J. 2019) (citing Jones v. Barnhart, 364 F.3d
501, 505 (3d Cir. 2004)).  SSR 96-8p requires that each function
"must be considered," but it does not require every function to
be specifically delineated in the RFC.  Indeed, SSR 96-8p
contemplates that in her "final RFC assessment," an ALJ may
assess the functions in combination rather than individually.

While a neat organization of the analysis around each
function is preferable, failure by an ALJ to do so is not
reversible error where the ALJ explains her RFC findings and
those findings are supported by substantial evidence.  Malcolm
v. Commissioner of Social Security, 2017 WL 5951703, at *19 n.14
(D.N.J. 2017) (noting "where, as here, the ALJ's RFC
determination is supported by substantial evidence, and is
'accompanied by a clear and satisfactory explication of the
basis on which it rests,' [Fargnoli, 247 F.3d at 41], the Third
Circuit does not require strict adherence to the function-by-
function analysis set forth in Social Security Ruling 96-8p")
(citing Chiaradio v. Comm'r of Soc. Sec., 425 F. App'x 158, 161
(3d Cir. 2011) (affirming the ALJ's RFC determination, despite

15

the fact that "the ALJ did not make a task by task analysis," where the ALJ's RFC finding was supported by substantial evidence in the record, and the ALJ's "overall review carefully considered [the claimant's] past relevant work and the ALJ assessed what [the claimant] could reasonably do.")); Garrett v. Comm'r of Soc. Sec., 274 F. App'x 159, 164 (3d Cir. 2008) (affirming the ALJ's RFC determination, despite the ALJ's failure to perform the precise function-by-function assessment outlined in SSR 96-8p, where the ALJ questioned the claimant about the physical limitations of her prior work, and substantial evidence supported the ALJ's findings); Bencivengo v. Comm'r of Soc. Sec., 251 F.3d 153 (Table), [published in full-text format at 2000 U.S. App. LEXIS 38785 at *5] (3d Cir. Dec. 19, 2000) ("Although a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing.")).

Here, the ALJ explained how functions like climbing and mental focus bore on Plaintiff's RFC. (R. at 20). While the ALJ certainly could have been more detailed in explaining how each function would translate into the amount of hours Plaintiff could work per day, the ALJ's detailed recital of the medical evidence and how it affected Plaintiff's ability to work before pronouncing his RFC determination was sufficient under Third Circuit law. Malcolm, 2017 WL 5951703 at *19.

16

Separately, the Court notes that while the ALJ described Plaintiff's RFC as limited to sedentary work in the heading of his section on the RFC and the VE opined on other sedentary jobs Plaintiff could do in the national economy, he twice referred to Plaintiff's RFC limitation as "light" toward the end of his Opinion.  (R. at 20, 22).  This presents the Court with the question of whether this was a mere typographical mistake such that the reference to light work was harmless error.  The Court thinks it was.

Courts often decline to reverse and remand appeals of denials of benefits based on such typographical errors where the ALJ's meaning is otherwise clear.  Farmer v. Comm'r of Soc. Sec., No. CIV.A. 13-7697 JLL, 2014 WL 4237364, at *12 (D.N.J. Aug. 26, 2014) ("Courts in this Circuit have been willing to categorize an inconsistency in an ALJ's decision as a typographical error when the ALJ's intent is otherwise apparent from the decision as a whole.").  This is especially so where the hypothetical posed to the VE was accurate and the ALJ considered the VE's testimony accordingly.  Luna v. Comm'r of Soc. Sec., No. CV 14-6953 (ES), 2016 WL 3763339, at *7 n.2 (D.N.J. July 13, 2016) ("Read in context, it appears that the ALJ thus presented the correctly worded RFC formulation to the VE at the hearing prior to issuing the administrative decision. Because the VE's ultimate conclusion was based on the correctly

17

worded RFC, the fact that the ALJ described the RFC incorrectly in the opinion itself is at best harmless error.").

Though the ALJ referenced light work twice in his Opinion, the limitations that he imposed in his analysis were consistent with work at the sedentary level. (R. at 17-20, 22). The hypothetical that the ALJ posed to the VE at the hearing was based on a limitation to sedentary work and the proposed jobs that the VE cited were sedentary jobs based on the Dictionary of Occupational Titles. (R. at 76-77). The jobs that the ALJ referenced in his Opinion as alternative work were at the sedentary level. (Id. at 22). The Court declines to remand on the basis of what appears to be a typo where the error is harmless. Rutherford, 399 F.3d at 553 ("[A] remand is not required here because it would not affect the outcome of the case.").

> **v.   Whether the ALJ Posed an Accurate Hypothetical to the VE**

Plaintiff argues that the hypothetical that the ALJ gave to the VE did not account for the side effects of his medication and his obstructive sleep apnea as well as his inability to go to work because of the number of doctor's appointments he attends on a monthly basis. (ECF 12 at 30). The Third Circuit has held that "a hypothetical question posed to a vocational expert must reflect *all* of a claimant's impairments[.]"

18

Rutherford, 399 F.3d at 554 (emphasis in original).  This does not mean all of the impairments as alleged by a claimant but those that are credibly established in the record.  Id.

Here, the ALJ discounted the credibility of Plaintiff's allegations regarding drowsiness from his medication and tiredness from his sleep apnea as he did not find it supported by objective medical evidence.  (R. at 18 (stating that the record showed that "[t]he claimant presented with unimpaired judgement, memory and ability regarding concentration/attention[,]" when appearing at a community counseling center).  With regard to absenteeism from work, the ALJ noted that in the past Plaintiff did not have difficulty with absenteeism in the past.  (Id. at 19).  Indeed, the only evidence of absenteeism in the record, as far as the Court can see, is the Plaintiff's 2019 testimony.  (R. at 73).  DiMassimo v. Berryhill, No. 1:17-CV-01085, 2019 WL 1030558, at *9 (M.D. Pa. Jan. 30, 2019), report and recommendation adopted, No. 1:17-CV-1085, 2019 WL 1014464 (M.D. Pa. Mar. 4, 2019) ("The absence of credibly established limitations regarding pacemaker syndrome in the record causes the Court to find that the ALJ's failure to specifically account for pacemaker syndrome in the hypothetical was not error.").  The ALJ was not required to pose limitations in the hypothetical that he did not find credible.

### vi.  Whether There Were a Significant Number of Jobs for Plaintiff

Plaintiff argues that the ALJ did not meet his burden to show that there were a significant number of jobs that Plaintiff could perform in the New Jersey economy to justify a finding that he was not disabled.  (ECF 12 at 32; R. at 32).  Plaintiff misstates the standard.  If there is sufficient work in the national economy, not just regional, that Plaintiff can do, the ALJ will have met his burden at step five.  See 20 C.F.R. § 416.966(b)[6]  A panel of the Third Circuit has affirmed a finding that there was no disability where there were thousands of jobs available in the national economy per the analysis at step five. Phillips v. Barnhart, 91 F. App'x 775, 778 (3d Cir. 2004); Kirkland v. Colvin, No. CV 13-5441, 2016 WL 1608487, at *2 (D.N.J. Apr. 22, 2016) (affirming the Commissioner's decision where "the ALJ found that Plaintiff could work in three different jobs, each of which had thousands of positions in the national economy and hundreds in the local economy").

_____

[6] 20 C.F.R. § 416.966(b) ("Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications. Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered work which exists in the national economy. We will not deny you disability benefits on the basis of the existence of these kinds of jobs. If work that you can do does not exist in the national economy, we will determine that you are disabled.  However, if work that you can do does exist in

Here, the ALJ found that in the national economy there were 46,541 jobs for document preparer, 5,938 for addresser, and 3,854 for cutter and paster.[7]  (R. at 77).  In light of the thousands of jobs available nationally, this Court cannot say that the ALJ did not meet his burden at step five of his analysis.

**III. Conclusion**

For the reasons expressed above, the decision of the ALJ was supported by substantial evidence and must be affirmed.

An accompanying Order will be issued.


Date:   July 12, 2022                    s/  Noel L. Hillman
At Camden, New Jersey             NOEL L. HILLMAN, U.S.D.J.

---

the national economy, we will determine that you are not disabled.").

[7] Even accepting Plaintiff's contention, for which he does not provide a citation, that there are 930 document preparer jobs, 118 adresser jobs, and 11 cutter and paster jobs in New Jersey, (ECF 12 at 32), there are still over one thousand jobs available to Plaintiff in the state.